V. J. WITHERS V. STATE.

No. 26,584. December 2, 1953.
Appellant's Motion for Rehearing Denied (Without Written Opinion)
February 3, 1954.

*Everett Lord,* Beaumont, and *Percy Foreman,* Houston, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was charged by indictment with the offense of murder without malice, the indictment alleging that he voluntarily killed James Kirby by cutting him with a knife. He entered a plea of guilty and the jury, under instruction of the court, returned a verdict finding him guilty and assessing his punishment at four years in the penitentiary.

A motion for new trial was filed alleging that the verdict was contrary to law and the evidence "and said defendant was not tried legally."

This motion was overruled and appellant gave notice of appeal.

Unless raised by the above allegations of the motion for new trial, the sole ground for reversal presented here was not raised in the trial court.

The contention is that the trial court erred in not withdrawing the plea of guilty and submitting the case to the jury on a plea of not guilty "for the reason that the evidence clearly revealed that appellant was acting in defense of another."

The killing occurred at a fish camp and cafe operated by I. Z. McDougald on Pine Island Bayou, in Hardin County. Appellant was a friend and frequent patron of the cafe, and arrived there with a girl friend about 9 or 9:30 P.M. on the day of the killing.

The deceased James Kirby and three other boys, Parks, Overstreet and Lewis, arrived about 11 P.M. They were not known to the proprietor, McDougald.

It appears that McDougald saw one of the boys (not the deceased) who came in the car with the deceased put something in the car. He investigated and saw that it was six cans of beer, and found that a like amount was missing from his store.

McDougald testified that he approached the deceased James Kirby and asked him if there was another boy out there; that the deceased resented his question and went outside, then returned and started "fussing" with McDougald and was told to leave. McDougald "pushed on him" and the deceased resisted.

McDougald then got his pistol and again ordered the deceased out and proceeded to push him out. At this point appellant attempted to aid McDougald and McDougald "told him not to, to go sit down, I could do it myself."

Two other men present, Williams and Wilson, attempted to stop appellant as McDougald was pushing deceased out the main door and off the screened porch. The deceased continued to resist and on the outside McDougald struck him several blows with his fist and the deceased struck at McDougald but did not hit him.

Appellant threatened to "cut in two" Wilson and Williams and they released him and he followed McDougald and the deceased outside. He then got into the fight and was seen to strike the deceased, who then ran toward the highway followed by appellant.

When appellant returned to the fish camp he handed a pocket knife to Williams and said "I worked on him with that and worked on him hard," and told Williams to throw the knife in the river. Instead the knife was recovered from the commode where Williams said he dropped it.

McDougald, the proprietor of the fish camp, testified that after appellant returned he said "I cut this man and I cut him bad and he is going to die." He testified further that the deceased saw him get his pistol but continued to resist; that when he got his gun and set his head to put the deceased out it did

not take him long to get him out; that he did not intend to use his pistol if he could put the deceased out without it; that if he had desired to injure the deceased seriously he was in position to do so, having the pistol and being experienced in its use; that he struck the deceased only with his fist; that he did not see the deceased hit appellant and so far as he knew the deceased did not hit him; that at no time did he see any weapon, "knife, gun, or otherwise" in the hands of the deceased, and he used no weapon in striking at the deceased.

A trail of blood was found extending from the point where appellant struck the deceased to the highway. Death ensued as a result of ·a knife wound in the groin. A hunting knife with a 2½ inch blade and a scabbard were found on the body of the deceased at the funeral home.

As we view the evidence, the killing was not shown to have been in defense of McDougald, and there is no evidence to show that appellant or McDougald believed that McDougald was in danger of suffering serious bodily injury or death at the hands of the deceased at the time.

Such being our view of the evidence, it becomes unnecessary that we consider the absence of an objection to the charge or motion raising the issue in the trial court.

In Green v. State, 121 Tex. Cr. Rep. 349, 51 S.W. 2d 391, Judge Lattimore speaking for this court said:

"Appellant in his motion for new trial urged that because he repudiated his written confession and testified that deceased was 'cussing and raising sand,' when they hit him, therefore the trial court should have had the plea of guilty changed to a plea of not guilty. We are cited to no case, and know of none, which seems to require such course on facts like these. In the cases of Taylor v. State, 88 Tex. Cr. R. 470, 227 S.W. 679, and Yantis v. State, 95 Tex. Cr. R. 541, 255 S.W. 180, we discussed the propriety of the withdrawal of a plea of guilty when the testimony raised the issue of the insanity of the accused; the reason for such holding being apparent. No man mentally unsound should be foreclosed and held capable of comprehending the result of a plea of guilty and tried as upon such plea. In the instant case there is nothing showing the facts, if any, heard by the court in connection with the presentation of the motion for new trial, and it is not urged that any evidence raised the

issue of appellant's insanity, and we see no reason for believing that the court should have withdrawn the plea of guilty and had entered a plea of not guilty."

The judgment is affirmed.